JAMESON v. JAMESON.

No. 9862.

United States Court of Appeals
District of Columbia Circuit.

Argued May 11, 1949.

Decided June 13, 1949.

59

Mr. John H. Burnett, Washington, D. C., with whom Messrs. Chapin B. Bauman and Leonard A. Block, Washington, D. C., were on the brief, for appellant.

Mrs. Elizabeth M. Cox, Washington D. C., for appellee.

Before CLARK, WILBUR K. MILLER and PRETTYMAN, Circuit Judges.

CLARK, Circuit Judge.

Appellee herein, Rose Perel Jameson, filed suit in the District Court in this jurisdiction against her husband, R. D. Jameson, appellant herein, for payment of alimony in arrears. The claim for relief was based upon a decree which appellee had obtained on August 15, 1935, in the United States Court for China. The husband's answer admitted the legality of that decree but set up as a defense to the action his claim that the 1935 decree had been modified on June 2, 1936. The answer also asserted that the husband had complied with the alimony decree as he claimed it had been modified. Since the sole issue in this case, in end result, is whether or not the 1935 decree has been modified, we reproduce below the

entire document which appellant says modified the original 1935 decree.

"United States Court for China
"Milton J. Helmick, Judge
"Shanghai, China
"June 2, 1936
"Mr. R. D. Jameson
"7 Hsien Hsiao P'ai Hutung
"Peiping, China
"Mrs. Rose Perel Jameson
"21 Mei Cha Hutung
"Peiping, China
"Dear Sir and Madam:
"The Court has carefully considered the questions raised in the informal discussion with both parties in Tientsin regarding modification of the Final Decree in the case of Jameson v. Jameson, No. 3826 in this Court. The Court does not feel justified in interfering with the plans for the education of the minor child which have been made by his mother, to whom his custody was committed by the Court.

"In view of the extreme uncertainty of the exchange rate of Chinese money, the Court feels that Mr. Jameson cannot justly be held to the performance of the original decree requiring the payment of £30 per month allowed Mrs. Jameson when she is not in China. However, the Court is willing to order payment of $375. Mex. per month when she is outside of China. Of course the arrangement may be further modified in case exchange rates should alter or in case Mr. Jameson's salary should change or he be paid in U. S. money instead of Chinese.

"The Court directs that the payments be made through some bank.
"Very truly yours,
"(signed) Milton J. Helmick, Judge.
"MJH:HW"

After the pleadings were filed below, appellee filed a motion for summary judgment, supported by her affidavit. Appellant opposed the motion with his own affidavit. The trial court entered a summary judgment in favor of the wife in the amount of $4,774.20 and the husband appeals.

It is appellant's first and foremost contention that the trial court erred in grant-

ing summary judgment because the pleadings below clearly presented a genuine issue as to a material fact, namely, whether or not the above-quoted document was entered in the record of the proceedings in China as an order of the United States Court for China. Further investigation of this contention reveals that it is appellant's claim that, because his affidavit in opposition to the motion for summary judgment states that he "verily believes that said order [that is, Judge Helmick's letter of June 2, 1936] was a part of the record in said cause," a genuine issue of fact springs into being thus requiring a trial of that "issue." Appellant's opposing affidavit goes on to state that he has made an effort to locate the original record of the proceedings in China but without success.

Rule 56(e) of the Federal Rules of Civil Procedure, 28 U.S.C.A., pertains to affidavits filed in support of or opposing summary judgment and states as follows:

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith * * *."

■ This rule plainly requires (the word "shall" being mandatory) that an affidavit state matters personally *known* to the affiant. A statement in such affidavit as to what the affiant "verily believes" does not satisfy this requirement. Belief, no matter how sincere, is not equivalent to knowledge. It is further required that the facts set forth in the affidavit be such as would be admissible in evidence should they be given from the witness stand during trial of that case. The statements in appellant's affidavit which we have outlined above would, if given as testimony, be clearly objectionable as being hearsay. As one federal court has put it:

"Affidavits filed by a party in support of or in opposition to a motion for summary judgment must present evidence. The affidavits should follow 'substantially the same form as though the affiant were giving testimony in court.'"[1]

Disregarding, then, as we must, the objectionable statements in appellant's affidavit, there remains nothing upon which to base the assertion of a genuine issue of fact. Had this case proceeded to jury trial, there obviously would have been no factual issue supported by competent evidence for the jury's consideration. It follows irresistibly, though unfortunately for appellant, that this case was properly one susceptible of disposition by summary judgment.

■ Therefore, there remains for our determination only the question of whether or not the trial court as a matter of law correctly decided that Judge Helmick's letter, quoted above, was in legal effect not a valid order or decree of the United States Court for China. We are constrained to hold that this ruling was proper.

Appellant has argued before us that the China court had[2] the power to modify its original divorce decree. In our view of this case, however, it is unnecessary to decide whether the power existed because, even assuming existence of the power, it was not exercised here.

Appellant forcefully contends that the letter was in fact an order. He supports this contention with attempts to show the "extremely informal" nature of court proceedings in China in 1936. He shows that the China court could hear cases in either of two cities in China, that the hearing may have been in one city and the decision in the other, that it was not necessary that counsel for the parties be present, and that, except for trials on the merits, proceedings could be conducted in the judge's chambers without attendance of other court officials. Assuming all these things to be true, they show no more than that the method of

---

[1] D.C.Del.1942, Seward et al. v. Nissen et al., 2 F.R.D. 545, 546.

[2] Our use of the past tense is purposeful since, effective May 24, 1943, the United States Court for China ceased to function as a result of a treaty entered into between the United States and the Republic of China. 57 Stat. 767, 782.

conducting the proceedings was informal. Such informality is far short of establishing that a personal letter 'from a judge to the parties has the binding effect of a formal order of the court.

Appellee, on the other hand, offers convincing proof that the China court was in the same status as all United States District Courts. This was certainly true in connection with appeals taken from the China court to the United States Circuit Courts of Appeals.[3] It has been held that one not a party to a suit in or a judgment from the China court is not a proper party to an appeal therefrom.[4] It has also been held that the rulings of the China court, in a case tried without a jury must be excepted to at the time and be preserved by a bill of exceptions in order to obtain appellate review of those rulings.[5] These holdings do not imply informality as to proceedings in the China court. Rather, they show that the opposite is true.

It is interesting and, we think, important to note that the original divorce decree of 1935 in this case was completely formal and fully complied with all of the requirements of form of the United States District Courts. That decree bore the filing stamp of the clerk of the China court; it was couched in language customarily used in court orders or judgments, containing two "whereas" clauses and a clause commencing with "It is hereby ordered, adjudged and decreed that"; and it concluded with "By the Court" followed by Judge Helmick's signature. Judge Helmick's letter of June 2, 1936, less than a year later has none of these characteristics. The letter commenced with "Dear Sir and Madam" and concluded with "Very truly yours" followed by the judge's signature. The letter stated that "the Court is *willing to order* payment."[6] This is not the language of a court order. It is merely an expression by the judge as to what he is willing to do should the parties request it. Unfortunately for appellant, there is nothing in the record to show that anything further was ever done in the case by the China court.

In St. Louis Amusement Co. et al v. Paramount Film Dist. Corp. et al.,[7] the court went much further than it is necessary for us to go in this case when it held that the filing of a judge's opinion does not establish that a final judgment has been entered. The court in that case quoted with approval the following principle:

"In the federal courts an opinion is not a part of the record proper. England v. Gebhardt, 1884, 112 U.S. 502, 506, 5 S.Ct. 287, 25 L.Ed. 811. Consequently a statement in an opinion of the conclusion reached by the court, even though couched in mandatory terms, cannot serve as the order or judgment of the court. It is necessary that a definitive order or judgment be made and entered in the court's docket in due form."[8]

In 30 American Jurisprudence, Judgments at page 824 we find the following significant language:

"Before judicial action may be regarded as a judgment, it must be clear that the action of the court is intended as such, and not merely as an indication of what the judgment is to be, * * *"

Again, at page 825, it is said that:

"* * * it is clear that the filing in the clerk's office of a written instrument signed by the judge and determining the final rights of the parties in the action constitutes the judgment * * *."[9]

In accordance with the foregoing and for the reasons stated above, we hold that (1) there was no genuine issue of fact raised by the pleadings below and thus that this was a proper case for application of summary judgment, and (2) the trial court properly held that the 1936 letter was not a modification of the 1935 decree. It follows that the judgment must be affirmed.

---

3 22 U.S.C.A. § 192, 34 Stat. 815 (1906), repealed June 25, 1948, 62 Stat. 992, effective September 1, 1948.

4 Smith v. American Asiatic Underwriters, etc., 9 Cir., 1943, 134 F.2d 233.

5 China Press, Inc., v. Webb, 9 Cir., 1925, 7 F.2d 581.

6 Emphasis ours.

7 8 Cir., 1946, 156 F.2d 400.

8 8 Cir., 156 F.2d at page 402, taken from In re D'Arcy, 3 Cir., 1944, 142 F.2d 313, 315.

9 See also, 49 C.J.S., Judgments, §§ 16b, 18, and 62 (1947).